FILED

2006 Jul-07  AM 07:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **CURTIS WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **2:04-CV-986-VEH** |
| | ) | |
| **MIKE HALE, as Sheriff** | ) | |
| **of Jefferson County, Alabama,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

This Court has before it the September 22, 2005, motion of Defendant Mike Hale, Sheriff of Jefferson County, Alabama (hereinafter "Defendant") for summary judgment as to Plaintiff Curtis Williams's (hereinafter "Plaintiff") race discrimination claim (doc. 35).  For the reasons set forth below, the Defendant's motion for summary judgment is due to be **GRANTED** as to Plaintiff's racial employment discrimination claim based on disparate treatment in job transfers under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991.

### I. Procedural History

This is a civil action, filed originally by Plaintiffs Anthony Pippens, Byron K. Deramus, Wilbert Miller, Jr., James E. Perry, Felicia T. Rucker, and Curtis Williams, against the Defendants, the Jefferson County Sheriff's Department and

Mike Hale in his individual and official capacities as the Sheriff of Jefferson County. (doc. 23). The initial Complaint in this case was filed on December 19, 2003, and given case number CV-03-BE-3352-S. On May 13, 2004, Judge Lynwood Smith severed the action into six individual cases.[1] The present action is brought by Plaintiff Curtis Williams.

The Amended Complaint, filed on February 25, 2004, adds as Defendants the Jefferson County Commission and Jefferson County, Alabama. (doc. 4). The Amended Complaint also alleges three Counts against the Defendants for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Count I); violation of 42 U.S.C. §§ 1981 and 1981(a) through section 1983 (Count II); violation of the Plaintiff's rights to equal protection (Count III); and violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983 for retaliation in violation of Plaintiff's First Amendment right to political association (Count IV).[2] (doc. 4).

---

[1]      The actions of Plaintiffs Pippens, Miller, and Rucker are the subject of separate pending summary judgment motions before this Court. The actions of Plaintiffs Deramus and Perry were dismissed with prejudice by Judge Blackburn on August 2, 2005, and October 24, 2005, respectively.

[2]      This Court granted Plaintiff's motion to dismiss all claims against Defendant Mike Hale in his individual capacity. (doc. 23). In a memorandum opinion published on October 28, 2004, (doc. 24), this Court dismissed with prejudice (1) all claims against Jefferson County; (2) all claims against the Jefferson County Commission; (3) Plaintiff's claims against Defendant Hale in his official capacity for violations of 42 U.S.C. § 1981 and § 1981(a) through 42 U.S.C. § 1983 (Count II); (4) Plaintiff's claims against Defendant Hale in his official capacity for violation of Plaintiff's rights to Equal Protection (Count III); and (5) Plaintiff's claims against Defendant Hale in his official capacity for violation of 42 U.S.C. § 1981 and §1983 by retaliation in violation of Plaintiff's First Amendment rights to political association (Count IV).

     This Court denied Defendant's motion to dismiss as to Plaintiff's Title VII action against Defendant Hale in his official capacity. Therefore, Plaintiff's Title VII claim is the only claim that is the subject of this present action.

On September 22, 2005, Defendant filed a motion for summary judgment with this Court asserting that: (1) since Plaintiff has not alleged direct evidence showing that Sheriff Hale discriminated against him, Plaintiff must prove his case through circumstantial evidence, using the familiar burden-shifting framework established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) (Def's Mot. for Sum. Judg. 14); (2) Plaintiff has not established a prima facie case that he was subjected to any adverse employment action; or (3) Plaintiff has not established a prima facie case that persons outside the protected class were treated more favorably (Def.'s Mot. for Sum. Judg. 14); and (4) even if plaintiff could somehow establish a prima facie case of race discrimination, Defendant can state a legitimate, non-discriminatory reason for the alleged adverse employment action and Plaintiff cannot demonstrate that the Defendant's employment decision is pretext for discrimination.[3] (Def.'s Mot. for Sum. Judg. 14).

The Defendant submitted evidence[4] in support of his motion for summary

---

[3]   This Court denied Defendant's motion for summary judgment on October 12, 2005. (doc. 27).  The Defendant filed a motion to reinstate the Defendant's motion for summary judgment on February 6, 2006. (doc. 38).  This Court granted the Defendant's motion to reinstate the Defendant's motion for summary judgment on February 6, 2006. (doc. 39).

[4]   Defendant submitted the deposition of Plaintiff Williams with attached exhibits; a New Employee Letter dated June, 1991; a Transfer Letter dated August 13, 1996; Personnel Orders dated July 24, 1998, May 15, 2001, July 10, 2003, and September 2, 2003; Jefferson County Sheriff's Department Officer Transfer List; Letter regarding Temporary Assignment dated October 1, 2002; Plaintiff's Responses to Interrogatories and Request for Production of Documents; Letter of Interest; Selection Letter dated May 7, 2004; and the Affidavit of Mike Lindon.

judgment and filed a supporting brief on September 22, 2005.[5]

## II. Standard of Review

## A. Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

---

[5]     Defendant's motion for summary judgment was not opposed by Plaintiff.

Once a moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 234 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

## B. Unopposed Motion for Summary Judgment

The nonmovant has not opposed the motion for summary judgment in the instant action. However, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Property*, 363 F.3d 1099, 1101 (11th Cir.2004), citing *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11 th Cir. 1988) (per curiam). See also *Hibernia Nat'l Bank  v. Administration Central Sociedad Antonima*, 776 F.3d 1277, 1279 (5th Cir. 1985) ("a motion for summary judgment cannot be granted simply because there is no opposition...."), citing *John v. La. (Bd. of Trustees for State Colleges & Universities)*, 757 F.2d 698, 709 (5th Cir.1985). "[T]he district court's

order granting summary judgment must 'indicate that the merits of the motion were addressed.'" *One Piece of Real Property*, 363 F.3d at 1102, quoting *Dunlap*, 858 F.2d at 632.

While this court is not required to examine every item of evidence before it when considering a motion for summary judgment, it must make certain that the motion is "supported by evidentiary materials." *One Piece of Real Property*, 363 F.3d at 1101.  At the least, this court must consider all the evidence submitted by the movant in support of its motion. *Id*., citing *Jeroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989) (per curiam) ("...the district court must review the motion and the supporting papers to determine whether they establish the absence of a genuine issue of material fact.").

The movant must demonstrate an absence of a genuine issue of material fact; if the movant fails to meet this burden, this court may deny the motion, without regard to whether the nonmovant has filed a response.  *Hibernia Nat'l Bank*, 776 F.3d at 1279, citing *John*, 757 F.2d at 708.

However, if the nonmovant has not supplied the court with a response to any issue of fact, this court may receive the movant's factual account as "a prima facie showing of its entitlement to judgment." *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5t h Cir. 1988), citing *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. V. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### III. Relevant Facts

Plaintiff, a black male, began working as a Deputy for the Jefferson County Sheriff's Office, Bessemer Jail Division in July 8, 1991.  (Ex. 2, 6/19/91 New Employee Letter; Compl. ¶ 48).  On October 1, 2002, Plaintiff received a temporary assignment to the Bessemer Enforcement Division to help assist in an investigation. (Ex. 1, Williams Dep. at 19; Ex. 7, 10/1/02 Letter regarding Temporary Assignment).  This appointment was to be effective until further notice. (Ex. 7, 10/1/02 Letter regarding Temporary Assignment).  Plaintiff had knowledge of sergeants working in the jail who had more seniority than he did at the time of his assignment from the jail to the Bessemer Enforcement Division.  (Ex. 1, Williams Dep. at 21).

In January 2003, after Sheriff Hale took office, Plaintiff was reassigned from his dayshift position in the Bessemer Enforcement Division and placed on the nightshift at the Birmingham Division Jail. (Ex. 8, Pl.'s Resp. Interrogs. & Req. Produc., ¶ 8).  This transfer, Plaintiff admits, represented no decrease in compensation or rank, though Plaintiff lost his ability to perform overtime work. (Ex. 1, Williams Dep. at 55-57; Amend. Compl. ¶ 50).  Plaintiff claims that this

transfer negatively impacted his family life and health. (Ex. 1, Williams Dep. at 55-57; Amend. Compl. ¶ 50).

After Plaintiff was transferred, he was replaced by Sergeant Jimmy Black, a white male possessing over ten (10) years more seniority than Plaintiff.  (Ex. 8, Pl.'s Resp. Interrogs. & Req. Produc., ¶ 8, Ex. 1, Williams Dep. at  9,22).

Plaintiff also claims that he experienced disparate treatment as to the terms, conditions, and privileges of his employment by being provided faulty vehicles. When he was reassigned from the Bessemer Enforcement Division to the Birmingham Jail, Plaintiff was without a county vehicle for one week and was subsequently assigned an older model patrol car that experienced mechanical problems.  (Ex. 8, Pl.'s Resp. Interrogs. & Req. Produc., ¶ 10).

On July 12, 2003, Plaintiff was reassigned from the Birmingham Division Jail to Birmingham Patrol and was issued a 1997 Ford Taurus that was not in good working condition and had to be taken to the auto shop on several occasions due to mechanical problems.  (Ex. 8, Pl.'s Resp. Interrogs. & Req. Produc., ¶ 10,Ex. 9, 7/10/03 Personnel Order).

 On four separate occasions between January 29, 2003, and August 25, 2003, Plaintiff applied for the position of Detective in both the Birmingham and Bessemer Criminal Divisions. (Ex. 1, Williams Dep. at 50-51; Ex. 8, Pl.'s Resp. Interrogs. & Req. Produc., ¶ 6).  These positions did not involve an increase in

compensation and were lateral transfers rather than promotions for a sergeant. (Ex. 13, Lindon Aff. ¶ 4).  Plaintiff has personal knowledge of one (1) of the openings for Detective going to a black male but has no knowledge as to who was selected for the remaining detective positions. (Ex. 1, Williams Dep. at 52, 53-54).

On September 6, 2003, Plaintiff was reassigned from the Birmingham Patrol Division to the Birmingham Criminal Division.  (Ex. 10, 9/2/03 Personnel Order).

On April 16, 2004, Plaintiff applied for an opening for Sergeant in Homeland Security, for which he was selected on May 7, 2004. (Ex. 11, Williams's Letter of Interest; Ex. 12, 5/7/04 Selection Letter; Ex. 1, Williams Dep. at 8).

## IV. Applicable Substantive Law and Analysis

Title VII provides that "[i]t shall be an unlawful employment practice for an employer... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e-2(a)(1).  Further, the statute makes it an unlawful employment practice for an employer "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because off such individual's race...." 42 U.S.C. § 2000e-2(a)(2).

9

**A. Sovereign Immunity In Relation to Plaintiff's Claims for Monetary Relief**

The Plaintiff requests the Court to issue an Order compelling the "defendant to make the Plaintiff[] whole by awarding [him] the position[] [he] would have occupied in the absence of race discrimination, back pay (plus interest), punitive damages, compensatory damages, nominal damages, liquidated damages, declaratory relief, injunctive relief, and benefits" (Pl.'s Prayer for Relief ¶ 3).  The Eleventh Amendment of the United States Constitution states that: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state. *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990).  The court has further clarified this issue in *Adams v. Franklin*, 111 F.Supp. 2d 1255, 1262 (M.D. Ala. 2000)(citing *Carr v. City of Florence, Ala.*, 916 F.2d at 1524) by applying this rule to actions taken by citizens of the state against whom Plaintiff intends to bring suit.

The Supreme Court has held that an unconsenting state is immune from lawsuits brought in federal court by the state's own citizens. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).  This Eleventh Amendment protection is further expanded because lawsuits against state officials in their official capacity are suits against the state when "the state is the real, substantial

party in interest."[6] *Pennhurst State School Hospital v Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (quoting *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed 389 (1945)).

A lawsuit filed against an Alabama sheriff is essentially a suit against the state.  Further, Article I, § 14 of the Alabama Constitution of 1901 states: "the state of Alabama shall never be made a defendant in any court of law or equity." *See, Parker v. Amerson*, 519 So.2d 422, 443 (Ala. 1987)(citing *Montiel v. Holcombe*, 119 So. 245 (Ala. 1940)).  In Alabama, the office of Sheriff is a state constitutional office, vested with the immunities of a state official as an agent or "arm of the state." *McMillian v. Monroe County*, 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d1 (1997)*; see also Alabama Code* § 36-22-3**.**

There a three exceptions to Eleventh Amendment immunity.  The Eleventh Amendment bars suits for monetary damages against a state by citizens of that state, unless (1) the state waives its Eleventh Amendment immunity or (2) Congress abrogates said immunity.  *Adams v. Franklin*, 111 F.Supp.2d at 1262 (citing *Carr v. City of Florence*, 916 F.2d at 1524).  There is a third exception to Eleventh Amendment immunity, which allows suit to be brought against a state or state agent provided that the state or agent violated the Plaintiff's constitutional

---

[6]    The state is held to be the real party in interest due to the fact that the state would have to pay any award of damages. *Carr v. City of Florence* 916 F.2d at 1524.

rights in some way by performing an official duty or action.  *Pennhurst*, 465 U.S. at 102, 104 S.Ct. at 909 (discussing *Ex Parte Young*[7], 209 U.S. 123, 28 S.Ct. 441, 53 L.Ed. 714 (1985)).   In *Ex Parte Young,* the Supreme Court held that the Eleventh Amendment did not prohibit issuance of an injunction against the Attorney General of Minnesota because an unconstitutional enactment was to be viewed as "void" and therefore does not "impart to [the officer] immunity from accountability to United States supreme authority." *Ex Parte Young*, 209 U.S. at 160, 28 S.Ct., at 454.

When applied to the case at bar, two of these exceptions can be immediately dismissed without further evaluation.  There is neither any evidence in the present action nor any jurisprudence that demonstrates that the State of Alabama has waived its Eleventh Amendment immunity.  Also, the third exception, which only grants injunctive relief, does not apply to the case at bar due to the fact that Defendant is invoking immunity only in relation to Plaintiff's monetary claims under Title VII as well as 42 U.S.C. § 1981 through § 1981(a) and 42 U.S.C. § 1983.

The second exception applies in this case because the Eleventh Amendment does not bar Title VII actions against state officials.  There is Eleventh Circuit case law that establishes that Congress has abrogated Eleventh Amendment immunity in

---

[7]       In *Young*, a federal court enjoined the Attorney General of the State of Minnesota from bringing suit to enforce a state statute that allegedly violated the Fourteenth Amendment.

such cases.  Specifically, the Eleventh Circuit has held that Eleventh Amendment immunity does not apply in civil actions invoking Title VII because Congress has clearly expressed its intention that state governments be subject to suit under Title VII.  *Allen v. Alabama State Board of Education*, 816 F.2d 575 (11th Cir. 1987); *see also Cross v. State of Alabama*, 49 F.3d 1490, 1502 (11th Cir. 1995).  Congress can abrogate a state's sovereign immunity only if: (a) Congress "unequivocally expressed its intent to abrogate the immunity," through "a clear legislative statement," and (b) Congress has acted "pursuant to a valid exercise of power."  *In Re: Employment Discrimination Litigation Against the State of Alabama, et al., v. State of Alabama*, 198 F.3d 1305, 1317 (11th Cir. 1999)(quoting *Seminole Tribe v. Florida*, 517 U.S. 44, 55, 116 S.Ct. 1114, 1123, 134 L.Ed.2d 252 (1996).  When Title VII was first enacted in 1964, its coverage was not extended to state and local governments.   In 1972, the statute was amended to include "governments, governmental agencies, [and] political subdivisions."[8] 42 U.S.C. § 2000e(a).

In *Fitzpatrick v. Bitzer*, 427 U.S. 445, 447-48, 96 S.Ct. 2666, 2667, 49 L.Ed.2d 614 (1976), the Supreme Court concluded that, [i]n the 1972 Amendments to Title VII of the Civil Rights Act of 1964, Congress, acting under § 5 of the Fourteenth Amendment, authorized federal courts to award money damages in

---

[8]     The 1972 Amendments retained the right of an individual aggrieved by an employer's unlawful employment practice to sue on his or her own behalf, upon satisfaction of the statutory procedural prerequisites, and made clear that right was being extended to persons aggrieved by public employers.  *See* 1972 Amendments, § 4(a), 86 Stat. 104, 42 U.S.C. §§2000e-5(a)-(g) (1970 ed., Supp. IV).

favor of a private individual against a state government found to have subjected that person to employment discrimination on the basis of "race, color, religion, sex, or national origin."   The Court also stated that "[t]here is no dispute that in enacting the 1972 Amendments to Title VII to extend coverage to the States as employers, Congress exercised its power under § 5 of the Fourteenth Amendment." Id. at 453 n.9, 96 S.Ct. at 2670 n.9.  Therefore, Congress abrogated state sovereign immunity as it relates to Title VII actions.  Accordingly, the Eleventh Amendment does not bar Plaintiff from receiving monetary damages on his Title VII race discrimination claims, should he prevail.

### B. **Plainitff's Claims of Disparate Treatment under Title VII**

"Whether an employer intentionally discriminated against an employee... is a question of fact, which may be proved either through direct or circumstantial evidence." *EEOC v. Joe's Stone Crab*, 296 F.3d 1265, 1272 (11th Cir. 2002). Defendant asserts that because Plaintiff cannot present direct evidence to establish a prima facie case showing that the complained-of unlawful employment practices have taken place, Plaintiff must prove his case "through circumstantial evidence, using the familiar burden-shifting framework established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973)." *Id.*

In order for the Plaintiff to create a rebuttable presumption of discrimination by proving a prima facie case of discrimination, he must show that: (1) he is a

member of a protected class; (2) he was subjected to an adverse employment action; (3) similarly situated individuals outside the protected class were treated more favorably; and (4) he was qualified for the job. *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997).

Once the Plaintiff establishes a prima facie case, the burden effectively shifts to the defendant, who must articulate a legitimate, non-discriminatory reason for the challenged employment action. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S 113, 142 (2000).   Once the presumption is rebutted, the employer is entitled to summary judgment unless the plaintiff proffers evidence from which a reasonable fact-finder could conclude that the reason articulated by the defendant was mere pretext for discrimination.  *Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002).

## Disparate Treatment in Employment Placement and as to Terms, Conditions, and Privileges of Employment

Plaintiff alleges that (1) he was discriminatorily reassigned from his position in the Bessemer Enforcement Division to the Birmingham Division Jail and was replaced by Jimmy Black, a white male; (2) due to his race, Plaintiff was discriminatorily deprived of the opportunity to perform the work of a Detective after applying for multiple Detective positions in the Birmingham and Bessemer Criminal Divisions; and (3) Plaintiff suffered disparate treatment as to the terms, conditions, and privileges of employment (a) by being deprived of a vehicle to use

for a week, (b) by being issued two (2) faulty vehicles at different points during his

employment, and (c) by having to perform night shift work after his transfer from

the Bessemer Enforcement Division to the Birmingham Division Jail.

### 1. Plaintiff's claim alleging that he was discriminatorily reassigned[9]

Plaintiff satisfies the first criteria of the *McDonnell Douglas* test as to

Plaintiff belonging to a protected class; she is an African American citizen of the

United States. (Amend. Compl. ¶ 13).  Although Plaintiff did not suffer a decrease

in compensation or rank when he was transferred from the Bessemer Enforcement

Division position, Plaintiff alleges that performing night shift work precluded him

from being able to perform overtime work, amounting to an adverse employment

action. (Ex. 1, Williams Dep. At 55-56; Amend. Compl. ¶ 50).  Plaintiff further

asserted that the night shift work negatively affected his family life as well as his

health. (Ex. 1, Williams Dep. at 56-57).  Defendant claims that performing night

shift work does not amount to an adverse employment action, which is defined in

Defendant's motion for summary judgment as being a "*serious and material*

*change* in the terms, conditions, or privileges of employment." (Def.'s Mot. for

Sum. Judg. 12) (citing *Davis v. Town of Lake Park*, *Fla.*, 245 F.3d 1232, 239 (11th

---

[9]      For the purpose of evaluating Plaintiff's claims as to the *McDonnell Douglas* prima facie
case test, it should be noted that Defendant Hale stipulated that Plaintiff is an African American,
thereby satisfying the first requirement of belonging to a protected class. (Ans. of Def. to
Amend. Compl. ¶ 8).  Accordingly, the first prong of this test will be assumed as accepted
throughout this opinion.

Cir. 2001) (emphasis in original)).  However, viewing these facts in the light most favorable to the Plaintiff, the second prong of the *McDonnell Douglas* analysis is satisfied.

As to Plaintiff's claim that a similarly situated member of a non-protected group received more favorable treatment, Plaintiff indicates that Sergeant Black should not have received the appointment to the Bessemer Enforcement Division due to his previous inability to "perform the job responsibilities of a Detective on two previous occasions." (Amend. Compl. ¶ 51).   Defendant stipulated that Sergeant Black replaced Plaintiff in the Bessemer Enforcement Division and that Black was also a white male. (Def.'s Mot. for Sum. Judg. ¶ 9).   Accordingly, Plaintiff has satisfied the third prong of the *McDonnell Douglas* analysis.  Plaintiff held the position from October, 2002, until January, 2003, thereby proving his qualification for the position and satisfying the final requirement. (Ex. 7, 10/1/02 Letter regarding Temporary Assignment; Ex. 8, Pl.'s Resp. Interrogs. & Req. Produc., ¶ 8).  Since all requirements of the test have been satisfied, Plaintiff has established a prima facie case for discrimination.

The burden is now placed on the Defendant to prove a legitimate non-discriminatory reason for the adverse employment action. *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997).  The Defendant provided evidence that Plaintiff was assigned to the Bessemer Enforcement Division on a temporary basis for the

express purpose of assisting in an investigation, and Plaintiff was notified that he would be able to hold this position "until further notice." (Ex. 7, 10/1/02 Letter regarding Temporary Assignment).  Moreover, Sergeant Black had over ten (10) years more seniority than Plaintiff. (Def.'s Mot. for Sum. Judg. ¶ 12).  Sergeant Black's seniority over Plaintiff as well as the initial temporary nature of Plaintiff's appointment to the Bessemer Enforcement Division are found to be non-discriminatory reasons sufficient to satisfy the Defendant's burden.

Although Plaintiff was able to establish the requisite prima facie case for discrimination, the Defendant has established a legitimate, non-discriminatory purpose for Plaintiff's transfer and for replacing Plaintiff with Sergeant Black. Plaintiff has failed to adduce any evidence that the Defendant's proferred reasons were pretextual.  Therefore, the Defendant's motion for summary judgment is due to be **GRANTED** as to Plaintiff's claim of disparate treatment based on unfair reassignment due to his race.

### 2. Plaintiff's race discrimination claims based on his non-selection for Detective positions, specifically: (1) Birmingham Criminal Division on 1/29/03;[10] (2) Bessemer Criminal Division around 2/6/03; and (3) Bessemer Criminal Division around 7/15/03.

Plaintiff applied, on four separate occasions, for Detective positions; twice for the Bessemer Criminal Division and twice for the Birmingham Criminal

---

[10]     These dates are not the official posting dates for these positions, but rather the dates that Plaintiff contends he applied for these positions. (Ex. 8, Pl.'s Resp. Interrogs. & Req. Produc. ¶ 6).

Division. (Ex. 8, Pl.'s Resp. Interrogs. & Req. Produc., ¶ 6).  In establishing a prima facie case for discrimination, Plaintiff must prove that he was subject to an adverse employment action. *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997).  Although Plaintiff can prove that he was denied the Detective positions for which he applied on three separate occasions, the Defendant has demonstrated that these positions were lateral transfers, resulting in neither a promotion nor an increase in compensation. Therefore, the Defendant has shown that the Plaintiff was not subject to an adverse employment action due to non-selection for the Detective positions. (Ex. 1, Williams Dep. at 50-55; Ex. 13, Lindon Aff. ¶ 4). Further, when asked in his deposition who he thought received these Detective positions for which he had applied, Plaintiff asserted that he had personal knowledge of one (1) going to a black male but no knowledge as to who was selected for the remaining positions. (Ex. 1, Williams Dep. at 52, 53-54).  Also, Plaintiff was selected for one of these positions in the Birmingham Criminal Division in September, 2003. (Ex. 10, 9/2/03 Personnel Order).  Plaintiff has put forth no evidence proving that the remaining positions were filled by a person outside of his protected class.  Plaintiff further undermines his argument because a Detective position was filled by the Plaintiff himself.  Therefore, the third prong of the test is not satisfied.

Plaintiff has failed to establish a prima facie case of discrimination as to Plaintiff's non-selection for the aforementioned Detective positions. Accordingly, the Defendant's motion for summary judgment is due to be **GRANTED** as to this issue.

### 3. Disparate Treatment as to the Terms, Conditions, and Privileges of Employment

Plaintiff was without a county vehicle for one week after he was reassigned from the Bessemer Enforcement Division to the Birmingham Jail. (Ex. 8, Pl.'s Resp. Interrogs. & Req. Produc., ¶ 10). Plaintiff was also issued two deficient vehicles on two separate occasions: (1) while Plaintiff was working in the Birmingham Jail; and (2) upon being transferred to the Birmingham Criminal Division. (Ex. 1, Williams Dep. at 33-37). Plaintiff asserts that his vehicle, issued to him after his reappointment to the Birmingham Jail, had to be taken in for maintenance on numerous occasions and that the police light bar on top of the car would occasionally come off "while [plaintiff] [was] driving down the road." (Ex. 1, Williams Dep. 33-34). Plaintiff further asserts that the vehicle he was issued upon assignment to the Birmingham Criminal Division lacked emergency lights, a working heating system, sirens, and a dashboard light. (Ex. 1, Williams Dep. 37).

A Florida Federal District Court found that an "adverse employment action is not limited to ultimate employment decisions such as a decision to discharge an employee." *Alford v. Florida*, 390 F.Supp.2d 1236, 1248 (S.D. Fla.,2005). "An

employer's conduct short of an ultimate employment decision is actionable as an adverse action if it reaches a 'threshold level of substantiality.'" *Id.*  "Thus, 'while not everything that makes an employee unhappy is an actionable adverse action, conduct that alters an employee's compensation, terms, conditions, or privileges of employment does constitute adverse action.'" *Id.*  The court further held that a "tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id* (citing *Davis*, 245 F.3d at 1249).

An Alabama Federal District Court has found that "a materially adverse employment action 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Geer v. Marco Warehousing, Inc.*, 179 F.Supp.2d. 1332, 1341 (M.D.Ala.,2001).  In *Geer*, the court refuses to find that "faulty equipment constitutes a materially adverse employment condition." *Id*.

Employing the findings of *Alford* and *Geer*, Plaintiff's claims that he was subjected to adverse employment actions due to being in possession of malfunctioning vehicles or being deprived of a vehicle for a week are without merit.  Therefore, even viewing these facts in the light most favorable to the non-moving party, Plaintiff has not satisfied the second prong of the *McDonnell Douglas* test.

Assuming Plaintiff had met the second prong, he then must prove that there are other similarly situated individuals outside of the protected class that were treated more favorably. *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997). However, Defendant points to Plaintiff's testimony, which states that, according to Plaintiff, getting a better running vehicle is a matter of "who you know and who likes you," (and, therefore, is not based on race). (Ex. Williams Dep. at 44-45). Further, as to Plaintiff's deficient vehicle he received after being transferred to the Birmingham Criminal Division, Plaintiff stated that other individuals, both black and white, had newer equipment.

Q. Did anyone else have problems with their vehicles like the ones you --

A. I couldn't tell you that, I just know that my vehicle was older than the people in the division I worked for, they had newer vehicles than I had.

Q. Were they all white individuals that had newer vehicles or --

A. They weren't all white.  They weren't all black, there was one black sergeant that was there also.

Q. And he had a newer vehicle?

A. Yes.

(Ex. 1, Williams Dep. at 36).

Plaintiff has failed to establish a prima facie case due to the fact that he cannot show that preferential treatment was given to a member of a non-protected class.

Accordingly, the Defendant's motion for summary judgment is due to be **GRANTED** as to Plaintiff's claims of disparate treatment regarding the terms, conditions, and privileges of employment under Title VII.

### V. Conclusion[11]

For the reasons set forth above, the Defendant's motion for summary judgment is due to be **GRANTED** as to all of Plaintiff's Title VII claims.

**DONE** and **ORDERED** this 7th day of July, 2006.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[11] Due to Plaintiff's inability to establish a prima facie case for discrimination under Title VII or, if Plaintiff were able to establish a prima facie case, because Defendant was able to put forth an unrebutted legitimate, non-discriminatory reason for the challenged employment action , the Eleventh Amendment immunity issue is moot.